Savoy Brass Mfg. Co., Inc. v. Commissioner.
Savoy Brass Mfg. Co. v. Commissioner
Docket No. 20176.
United States Tax Court
1950 Tax Ct. Memo LEXIS 214; 9 T.C.M. (CCH) 378; T.C.M. (RIA) 50110; April 21, 1950
*214 Amount of reasonable salary determined under section 23(a)(1)(A) of the Internal Revenue Code. Bernard Weiss, Esq., 136 E. 57th St., New York 22, N. Y., for the petitioner. Pershing W. Burgard, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $2,781.23 in the petitioner's income tax liability for the year 1944. The sole issue is whether or not the compensation paid by the petitioner to its president for the year 1944 was reasonable under the provisions of section 23(a)(1)(A) of the Internal Revenue Code. Certain minor adjustments made by the respondent in the petitioner's tax liability were not contested and are therefore not considered. The case was submited on oral and testamentary evidence presented at the hearing. Findings of Fact Petitioner is a corporation organized in 1935 under the laws of the State of New York. Its principal place of business is located in Long Island City, Queens, New York, New York. The petitioner filed its income tax return for 1944 with the collector of internal revenue for the first district of New York. *215 The petitioner's president, Abraham Kadish, was born in 1879. He began working in the brass manufacturing business when he was 11 years old. At 19 he became a foreman. In 1912 he bought a brass manufacturing business which he conducted as a proprietorship until the organization of the petitioner corporation in 1935. The stock in this corporation was held within the Kadish family. At first the business had but six employees. This number grew to about 100 by 1941. Abraham Kadish has been the petitioner's president since its incorporation. He devoted long hours to the business - as much as 14 hours per day. Kadish actively managed all phases of the operation of the business. He bought the raw materials, supervised the manufacturing process, personnel and financial affairs. The success and good reputation of the business were due to the efforts of the petitioner's president. In about 1923 the business began specializing in the manufacture of brass plumbing fixtures such as faucets, shower heads, drains, supports and shower curtain rails. Some of the more complicated articles consisted of as many as 20 to 30 parts. The manufacture of these articles continued through the year 1941 *216 in which year the petitioner's net sales were $650,359.32. In 1942 the availability of raw materials was restricted because of the war and the net sales fell off to $366, 332.77. The petitioner's attempts to manufacture war products then in demand were largely unsuccessful due to the high degree of precision required in such products and Kadish felt unable to direct such manufacture, particularly with the type of machinery which the business previously used. It was accordingly determined that the petitioner would lease its assets to a partnership consisting of the two sons of Abraham Kadish, his daughter and son-in-law. This lease was executed on March 1, 1943. The partnership agreed to pay the petitioner $750 per month for the use of its assets during the remainder of 1943 and $2,500 per month thereafter. In addition the partnership agreed to assume $10,000 of the petitioner's annual rental obligation on the premises. The partnership used the premises from March 1, 1943, through 1944. Much of petitioner's machinery was stored. The petitioner reoccupied the premises in 1945 and resumed production. Although the petitioner had leased its premises to the partnership, Kadish, petitioner's *217 president, visited the plant almost every working day in 1944. He inspected the stored equipment to see that it was properly maintained. He made sketches for new products, had blue prints drawn and machined these pilot models himself. In 1944 Kadish worked on the designs of nine or ten new fixtures which were added to the list of articles manufactured when the petitioner started full scale production again in 1946. The salaries paid to the petitioner's officers were determined at the beginning of each year at a conference of the directors. No dividends were ever paid by the petitioner. The net sales, gross profits, compensation of all officers, salary to Abraham Kadish, and net income of the petitioner for the calendar years 1939 through 1946 were as follows: Sales
Compensa-
Net
Gross
tion of all
Salary to
Net
Year
Sales
Profit
Officers
A. Kadish
Income
1939
$ 553,549
$138,187
$19,870
$12,750
$12,434
1940
538,874
138,391
20,200
13,000
11,693
1941
650,359
156,478
21,750
13,000
20,600
1942
366,332
152,376
21,850
13,250
25,907
1943
109,487
76,559
13,000
13,000
23,805
1944
653
453
13,000
13,000
2,017
1945
59,497
24,009
13,250
13,250
20,997
1946
1,044,872
213,578
57,226
16,500
51,985
*218 The petitioner's gross income in 1944 was $32,693.78 of which $30,000 was rent received from the partnership for rental of the premises. The respondent disallowed the compensation paid Kadish for the year 1944 in excess of $3,000. The respondent arrived at the figure of $3,000 arbitrarily by multiplying the rent of $30,000 by 10 per cent. The amount of $6,000 is reasonable compensation for the services rendered the petitioner in 1944 by Abraham Kadish. Opinion VAN FOSSAN, Judge: The only matter in dispute is the amount to be allowed as a deduction for salary of petitioner's president during the year 1944. Petitioner paid its president and claimed as a deduction the sum of $13,000, the same amount he had received for several preceding years while petitioner was in active operation. Respondent allowed $3,000, taking cognizance of the fact that petitioner had leased its plant to the partnership and so far as active operation was concerned was in the state of suspended animation. We agree with respondent that under the facts the salary of $13,000 was excessive and unreasonable. However, we agree with petitioner that the amount of $3,000 was unduly small. We have found as a *219 fact that the sum of $6,000 is a reasonable amount. The deficiency will be recomputed accordingly. Decision will be entered under Rule 50.